# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DENNIS GABRIEL** | * | **CIVIL ACTION NO. 09-0207** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Dennis Gabriel, born May 3, 1975, filed applications for disability insurance benefits[1] and supplemental security income on March 30, 2006, alleging disability as of July 15, 2005, due to diabetes, high blood pressure, kidney problems, acid reflux, an infected foot, nerve damage in both legs, and a cyst in the back of his head causing headaches.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1] Claimant met the insured status requirements through September 30, 2008.  (Tr. 11).

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dauterive Hospital dated November 9, 2005**. Claimant was admitted for pubic pain. (Tr. 141). He admitted that he did not take his medications or stick to his diet. He was chronically non-compliant. (Tr. 143).

**(2) Records from University Medical Center dated November 28, 2005 to June 2, 2006**. On November 28, 2005, claimant was seen for high blood sugar. (Tr. 197). He was out of hypertension medications. He reported drinking a fifth of gin and six to eight beers. (Tr. 198).

An EKG was abnormal, showing a nonspecific T wave abnormality. (Tr. 202). The assessment was palpitations likely secondary to heavy alcohol abuse. (Tr. 199).

On January 9, 2006, claimant was seen for a history of a severe left foot sprain while playing basketball. (Tr. 179-80, 189). X-rays of the left ankle showed a soft tissue prominence with a mild joint effusion. (Tr. 195-96).

On January 14, 2006, claimant continued to complain of left ankle pain and edema. (Tr. 185). He had not taken Advandamet for a month. X-rays showed no

apparent fracture or dislocation of the left foot. (Tr. 183-84). He was prescribed Lortab and Advil/Aleve, and instructed to refrain from alcohol. (Tr. 182).

On January 20, 2006, claimant complained of foot swelling. (Tr. 208). His hypertension was controlled. The assessment was left foot cellulitis. He was put an ADA diet and an insulin sliding scale for diabetes.

On January 29, 2006, claimant continued to complain of pain and swelling in his left foot. (Tr. 158). He had not taken Lantus and Advandamet that day. The assessment was cellulitis, diabetes mellitus II, and non-compliance.

On March 27, 2006, claimant reported that he had taken his blood pressure medications the night before, but not that day. (Tr. 152). His diabetes was poorly controlled. (Tr. 153). He was obese and non-compliant. He was prescribed a low fat diet and exercise. (Tr. 154).

On June 2, 2006, claimant complained of pain to his legs. (Tr. 149). The diagnosis was peripheral neuropathy, for which he was prescribed Neurontin. (Tr. 151).

**(3) Consultative Examination by Dr. Kenneth A. Ritter, Jr., dated August 17, 2006**. Claimant complained of diabetes, hypertension, reflux, headaches biweekly, leg and arm aches, cellulitis in the left foot, and a kidney problem in the past. (Tr. 217). His medications included Lantus, Avandia, Gabapentin, Prevacid,

Lotrel, and Aspirin. He had a prescription for Glucophage, but had not yet filled it. He also complained of blurred vision, and was given a prescription for eye glasses. However, he never filled it.

Claimant also reported rare chest pains in the right anterior chest. (Tr. 218). Additionally, he complained of nausea and vomiting every day for two years.

On examination, claimant was 5 feet 8 inches tall, and weighed 213 pounds. His blood pressure was 118/80. His visual acuity without glasses was 20/25.

Claimant ambulated with a limp favoring his left ankle. (Tr. 219). He had no ankle swelling. DP pulses were 2+ on the right and 1+ on the left. His left ankle had a full range of motion without redness, heat, tenderness, or swelling. Neurologically, he was intact, with normal DTRs, strength, and sensation.

Dr. Ritter's impression was diabetes mellitus, apparently under very poor control due to claimant's being very non-compliant with his medical and dietary regime; complaints of frequent vomiting and pain after eating; episodic headaches; complaints of pain in his legs and arms, which Dr. Ritter opined might be related to some degree of diabetic neuropathy, and a suggestion of alcohol abuse in the medical records.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter determined that claimant could lift/carry 25-35 pounds occasionally, and

20-25 pounds frequently. (Tr. 220). His ability to stand, walk, and sit were not affected by his impairment. He could climb, stoop, kneel, crouch, and crawl occasionally, and balance frequently. No other functions were affected by his impairment. (Tr. 221).

**(4) Residual Functional Capacity ("RFC") Assessment (Physical) dated August 29, 2006**. Dr. Henry Shoemaker determined that claimant could lift/carry 50 pounds frequently and 25 pounds occasionally; sit/stand and/or walk about six hours in an eight-hour workday, and had unlimited push/pull ability. (Tr. 223). He could frequently climb ramps/stairs and balance; occasionally stoop, kneel, crouch, and crawl, and never climb ladders/ropes/scaffolds. (Tr. 224). He was to avoid even moderate exposure to hazards, such as machinery and heights. (Tr. 226). Dr. Shoemaker noted that there were inconsistencies in claimant's statements, which made them only partially credible. (Tr. 227).

**(5) Record from Family Practice dated May 29, 2007**. Claimant was seen for diabetes mellitus, neuropathy of the legs and foot, and high blood pressure. (Tr. 230).

**(6) Records from UMC dated August 16, 2006 to May 12, 2008**. On October 9, 2006, claimant complained of leg pain. (Tr. 247). The assessment was

diabetes mellitus type II, poorly controlled; hypertension, controlled; diabetic neuropathy, and obesity. (Tr. 246).

On April 26, 2008, claimant complained of left shoulder pain, along with digital pain and swelling with tenderness in the right fingers, after an altercation. (Tr. 234). X-rays showed a minimal cortical fracture in the lateral part of the head of the humerus. (Tr. 235).

Claimant returned on May 12, 2008, with left shoulder pain and hand numbness. (Tr. 231).

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on May 20, 2008, claimant was 33 years old. (Tr. 20). He testified that he was 5 feet 6 inches tall and weighed 213 pounds. He stated that he went to alternative school until the fifth grade.

Claimant reported that the longest that he had held a job was two months because of his diabetes. (Tr. 28). He stated that he had a chauffeur's license. (Tr. 30).

As to complaints, claimant testified that he had diabetes, neuropathy in his legs, feet, arms, and hands, acid reflux, blurred vision, and a broken rotator cuff. (Tr. 22). He reported that he tore his rotator cuff when he was getting off of a ladder while cleaning out gutters.

Claimant complained of aching, numbness, and swelling in his feet. (Tr. 24). He stated that he was taking his medications for diabetes. (Tr. 23-24, 27). Additionally, he reported aching, throbbing, stiffness, and numbness in his fingers daily. (Tr. 25). He also stated that he had headaches about three times a month, lasting a day and a half. (Tr. 29-30).

Regarding other problems, claimant testified that he had stomach burning, nausea, and vomiting biweekly. (Tr. 25). He stated that he had stomach pain daily. (Tr. 26). He also reported blurred vision.

As to treatment, claimant reported that he saw different doctors at UMC. (Tr. 22). He stated that he was taking Novolin, Lantus, Avandia, Glucotrol, and shots. (Tr. 23).

**(8) Administrative Hearing Testimony of Dr. George Smith, Medical Expert ("ME")**. Dr. Smith testified that, based on the medical records, claimant had hypertension under good control, some headaches, acid reflux, muscle aches and pains, and diabetes. (Tr. 31). He noted that claimant had been non-compliant with his medications throughout the records. He also reported at least one episode of alcohol abuse. (Tr. 32).

Dr. Smith opined that claimant did not have an impairment or combination of impairments that met or equaled any of the listings. He suggested that claimant

should get his diabetes under control.

**(9) Administrative Hearing Testimony of Beverly Majors, Vocational Expert**.  Ms. Majors classified claimant's past work as a front end load operator as medium with an SVP of 3.  (Tr. 35).

**(10) The ALJ's Findings are Entitled to Deference**.  Claimant argues: (1) the ALJ erred in finding that he was able to do the full range of light work with his standing limitations, and (2) the ALJ erred in failing to consider whether he had a learning disability.

As to the first argument, claimant asserts that the ALJ erred in finding that he could do the full range of light work despite his foot problems.  [rec. doc. 8, p. 4]. Although claimant notes that "even the consultative examiner states that the claimant may have some degree of diabetic neuropathy causing some of these problems," Dr. Ritter found that standing/walking were not affected by claimant's impairment.  (Tr. 219-20). Additionally, the agency medical consultant, Dr. Shoemaker, determined that claimant was able to stand/walk about six hours in an 8-hour workday. (Tr. 223). In fact, despite claimant's complaints of foot problems, he was still playing basketball and climbing on a ladder while cleaning out gutters.  (Tr. 22, 171, 179-80, 189).

Further, Dr. Shoemaker noted that claimant had a history of non-compliance, and that his symptoms appeared to be attributable, at least in part, to his poorly

controlled diabetes. (Tr. 223, 227). Dr. Ritter observed that "[g]ood medication and dietary compliance would certainly benefit here." (Tr. 221). Additionally, the medical expert, Dr. Smith, testified that claimant "should get his diabetes under control." (Tr. 32).

It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Further, none of claimant's treating or consulting physicians had indicated that his physical impairments were disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). Thus, this argument lacks merit.

Next, claimant argues that the ALJ erred in failing to use a vocational expert in light of his non-exertional limitations of difficulty in understanding detailed instructions, difficulty in seeing, and difficulties in standing and walking. [rec. doc. 8, p. 5]. As previously stated, the medical records do not support claimant's assertion that he had difficulties in standing and walking. Additionally, claimant has cited no medical evidence showing that he had difficulties in understanding detailed

9

instructions. Further, Dr. Ritter determined that claimant's visual acuity without glasses was 20/25, and that he had failed to fill a prescription for eyeglasses. (Tr. 217).

The regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or his non-exertional impairments do not significantly affect his residual functional capacity.* (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2, Section 200.00. Here, the ALJ determined that claimant's non-exertional impairments did not significantly affect his residual functional capacity. (Tr. 15). This finding is supported by the medical evidence. Thus, the ALJ's decision not to pose a hypothetical to the vocational expert is entitled to deference.

Finally, claimant asserts that with his limited education, "it is doubtful that he would do well with complicated instructions." [rec. doc. 8, p. 7]. However, there is no evidence in the record to support his suggestion of a learning disability. Accordingly, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed February 26, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE